O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDUARDO CERVANTES, | ) | Case No. CV 12-09889 DDP (MRWx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| COUNTY OF LOS ANGELES; DEPUTY PAUL CRUZ #412035 individually and as a peace officer; DEPUTY VICTOR CISNEROS #519470 individually and as a peace officer, | ) | |
| Defendants. | ) | [Dkt. NO. 36] |

Presently before the court is Defendants' Motion for Partial Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I. Background**

On November 23, 2010 at approximately 1:00 p.m., Plaintiff was seated in his parked vehicle in the parking lot of 8 Ball Billiards in Maywood, California. (Cervantes Dep. at 55:19-56:2, 71:11-72:7; Cruz Dep. at 106:7-8; Surveillance Video at timestamp 00:00-00:01.)

Los Angeles County Sheriff's Deputies Paolo Cruz and Victor Cisneros (collectively, "the Deputy Defendants") were on patrol in a marked vehicle. (Cisneros Dep. At 95:22-96:5; Cisneros Dep. at 77:22-25, 84:1-19; Surveillance Video at timestamp 00:00-00:01.) Defendant Cruz noticed Plaintiff's vehicle had tinted front windows, and decided to conduct a traffic stop to cite or warn Plaintiff regarding the tinted windows. (Cruz Dep. at 112:12-112:19, 115:7-116:13, 116:22-117:14, 194:20-195:18.)

Cruz drove the patrol vehicle into the parking lot and stopped to the side of and behind Plaintiff's vehicle. The Deputy Defendants exited the patrol car and approached Plaintiff's car. (Cisneros Dep. at 83:15; Cruz Dep. at 119:6-120:23, 124:20-124:24; Surveillance Video timestamp 00:25-00:33.) Defendant Cruz approached the driver's side of the vehicle while Defendant Cisneros approached the passenger's side. (Cisneros Dep. at 83:19-84:6; Cruz Dep. at 120:19-120:23, 199:10-199:15.) At some point, Defendant Cruz ordered Plaintiff to exit the vehicle. (Cervantes Dep. at 96:13-18; Cruz Dep. at 126:9-130:3.) Plaintiff asked Defendant Cruz, "What is your PC?" (Cervantes Dep. at 96:21-97:1; Cisneros Dep. at 87:13-22; Cruz Dep. at 126:9-130:3.) Cruz then again commanded Plaintiff to get out of the car.[1] (Cervantes Dep. at 98:13-15.) Plaintiff exited the vehicle and Defendant Cruz ordered Plaintiff to face the vehicle. (Cervantes Dep. at 83:15-83:20; Cruz Dep. at 119:6-120:23, 124:20-124:24; Surveillance Video timestamp 00:25-00:33.)

---

[1] In his deposition, Defendant Cruz stated that he initially asked for Plaintiff's name and identification, and only ordered Plaintiff out of the vehicle once. (Cruz Dep.126:3-130:3.)

1    At this point, the parties' versions of the facts diverge
2 significantly.  Plaintiff contends that he was asked to place his
3 hands behind his back, and that when he complied, Defendant
4 Cisneros punched Plaintiff in the right side of the face with a
5 closed fist.  (Cervantes Decl. ¶ 4.)  Plaintiff was then taken down
6 to the ground backwards, causing him to hit his head and suffer a
7 wound. (Cervantes Decl. ¶ 5.)  Defendants then turned Plaintiff
8 onto his stomach and handcuffed him. (Cervantes Dep. 109:2-10; 16-
9 18.)

10    Defendants contend that when Defendant Cisneros attempted to
11 pat-down Plaintiff for weapons, Plaintiff physically resisted.
12 Only then did the Deputy Defendants take Plaintiff down to the
13 ground, knees and stomach first.  (Cisneros Dep. 135:21-136:15.)
14 Defendant Cisneros then turned Plaintiff onto his side to complete
15 the pat-down search.  (Cisneros Dep. 136:21-141:5.)  During the
16 pat-down search, Plaintiff told Defendant Cisneros he was going to
17 spit on him. (Cis Dep. 142:4-9; Cruz Dep. 163:11-22.)  Defendant
18 Cisneros then punched Plaintiff once on the right side of the face.
19 (Cisneros Dep. 142:8-19.)

20    Once handcuffed, Plaintiff was placed in the back of the
21 patrol car and arrested for violation of California Penal Code § 69
22 (resistance by force or violence against an executive officer).
23 (Cervantes Dep. 109:16-18; Cruz Dep. 101:17-18; 187:18-189:16.)

24    On December 2, 2010, after reviewing Defendant Cruz's and
25 Defendant Cisneros' incident reports, Deputy District Attorney
26 Robert Sheldon Nishinaka filed a misdemeanor complaint in Los
27 Angeles Superior Court charging Plaintiff with a violation of
28 California Penal Code § 148(a)(1) (resisting, obstructing, or

delaying a peace officer). (Nishinaka Deposition at 7:22-10:25, 81:5-82:17; Ex. 1 to Nishinaka Depo.)

On November 23, 2011, Plaintiff's criminal case was dismissed on a motion of the prosecution, pursuant to California Penal Code § 1385.[2] (Certified Criminal Docket LASC No. 0EA11900 at p. 9, Cha Decl., Ex. C.)

On November 19, 2014, Plaintiff filed a Complaint in this action against the County of Los Angeles and the Deputy Defendants, alleging five causes of action for civil rights violations. Defendants now move for summary judgment on Plaintiff's claims regarding his initial detention and for malicious prosecution subsequent to his arrest.[3]

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions

---

[2] California Penal Code § 1385(a) states that the judge or magistrate may dismiss an action on his or her own motion or upon the application§ of the prosecuting attorney in furtherance of justice. The reasons for the dismissal must be set forth in the minute order. Here, the trial court's minute order states that "the people announce unable to proceed." (Id.)

[3] Defendants also seek summary judgment on Plaintiff's Monell claim against the County of Los Angeles. Plaintiff does not oppose dismissal of that claim. This parties previously stipulated to the dismissal of Plaintiff's Third, Fourth, and Fifth Causes of Action. Defendants do not seek summary judgment on Plaintiff's excessive force claim.

4

of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d

1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A.   Plaintiff's Detention

        1.   The Initial Stop

Defendants argue first that the Deputy Defendants' initial decision to detain Plaintiff to cite him for having tinted front windows did not violate the Fourth Amendment. (Motion at 6.) Officers may conduct a traffic stop if they have reasonable suspicion that a person is committing, or is about to commit, a crime, including a traffic violation. United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006). "Reasonable suspicion" must be informed by specific, articulable facts, along with objective and reasonable inferences. Id.

The California Vehicle Code prohibits driving vehicles with tinted front side windows. See Cal. Veh. Code § 26708. That prohibition, however, applies only to vehicles driven upon highways. See Cal. Veh. Code §§ 360, 24001. While parking places adjacent to a roadway fall under the definition of "highway," parking lots do not. People v. Lopez, 197 Cal.App.3d 93, 99 (1987). In Lopez, police detained the defendant because she was sitting in a parked vehicle in a public park with what appeared to be an open container of beer. Id. at 95. California Vehicle Code section 23223 prohibits the possession of open containers of alcohol in a motor vehicle upon a highway. Because the parking lot

6

1  in which the defendant did not qualify as a "highway," the court
2  held that the detention was not justified. Id. at 101.
3      The Deputy Defendants concede that Plaintiff was not violating
4  any portion of the California Vehicle Code while parked in the
5  parking lot, but argue that Lopez is distinguishable and that the
6  initial detention was valid because Plaintiff was about to commit a
7  violation. (Mot. at 8-9.) Thus, the Deputy Defendants contend,
8  this case is more like People v. Ellis, 14 Cal.App.4th 1198 (1993).
9  In Ellis, a police officer detained the defendant for driving in a
10 parking lot without headlights. Ellis, 14 Cal.App.4th at 1200. In
11 a brief decision, the court adopted a "commonsense argument" that
12 officers need not have waited until the defendant entered the
13 highway to detain him. Id. at 1201. Assuming that California
14 Vehicle Code section 24400 applied only on highways, the court held
15 that although the defendant could not have been cited for his
16 conduct in the parking lot, the detention was nevertheless proper
17 because a crime was "about to occur" on a public street. Id. at
18 1202.
19     The Deputy Defendants argue that this case is more like Ellis
20 than Lopez because Plaintiff's car was not on blocks, attached to a
21 tow truck, or otherwise obviously inoperable. (Mot. at 8.) Thus,
22 Defendants argue, there was reason to believe that Plaintiff was
23 about to commit the crime of driving on a highway with tinted front
24 windows. This argument is not persuasive. In Ellis, the car at
25 issue was in motion, "adjacent to Ventura Road." Ellis, 14
26 Cal.App.4th at 1200. In Lopez, in contrast, and as here, the car
27 was stopped and parked. Like Plaintiff's car here, the car in
28 Lopez was not up on blocks or otherwise obviously inoperable. This

7

case, therefore, is more akin to Lopez than to Ellis. Absent any indication that Plaintiff was about to commit a crime, the Deputy Defendants' detention of Plaintiffs was not justified.

         2.   The Order to Exit the Vehicle

Upon approaching the driver's side of Plaintiff's vehicle, the Deputy Defendants ordered Plaintiff to exit the vehicle. Defendants contend that this order was lawful because "an officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle . . . ." Maryland v. Wilson, 519 U.S. 408, 410 (1997) (citing Pennsylvania v. Mimms, 434 U.S. 106 (1977) (per curiam)). That rule, however, is not dispositive here. As discussed above, officers had not lawfully stopped Plaintiff prior to ordering him out of his vehicle. Rather, the Deputy Defendants ordered Plaintiff to exit his vehicle without any reasonable suspicion that a crime was being committed or was about to be committed.

Defendants also argue, cursorily, that the order to exit the vehicle was a de minimis intrusion upon Plaintiff's liberty. (Mot. at 9.) Defendants position, however, is premised upon a misreading of Mimms. Mimms did not hold that an order to exit a vehicle is necessarily a de minimis intrusion upon personal liberty, but rather that it was a de minimis "additional intrusion" upon the liberty of a driver who had already been lawfully detained. Mimms, 434 U.S. at 114 (emphasis added). The Court explicitly noted that, absent a prior lawful detention, an officer may not order a driver out of a car simply because the officer wishes to speak with the driver. Id. at 114 n.6. Nor does Wilson support Defendants' apparent contention that an order to exit a vehicle is necessarily

8

de minimis. While <u>Wilson</u> extended <u>Mimms</u> to the passengers of lawfully stopped vehicles, it did so only due to officer security concerns created by the presence of passengers. <u>Wilson</u>, 519 U.S. at 413-14. Neither <u>Wilson</u> nor <u>Mimms</u> supports Defendants' argument that an order to a parked vehicle's sole occupant to exit the car is, as a matter of law, a de minimis intrusion. Absent reasonable suspicion or a prior, lawful traffic stop, Defendants' order that Plaintiff exit the vehicle violated the Fourth Amendment.

  B. Qualified Immunity

  The Deputy Defendants are entitled to qualified immunity, even in light of constitutional violations, if the right at issue was not clearly established "at the time of the incident, such that a reasonable officer would have understood her conduct to be unlawful in that situation." <u>Green v. City and County of San Francisco</u>, 751 F.3d 1039, 1051-52 (9th Cir. 2014) (internal quotation marks and citation omitted). Reasonable mistakes of either law, fact, or both may suffice to trigger qualified immunity. <u>Mattos v. Agarano</u>, 661 F.3d 433, 440 (9th Cir. 2011) (en banc).

  The Deputy Defendants' actions were reasonable under the circumstances. As discussed above, the law regarding the applicability of the California Vehicle Code to conduct on private property is not particularly well developed.[4] Furthermore, while there no evidence that Plaintiff was about to enter a highway, the Deputy Defendants' mistaken belief that Plaintiff was about to leave the parking lot was not, given the apparent operability of

---

[4] While California courts have addressed other parking lot activity cases, they often have done so only in unpublished, uncitable opinions, and with varying results.

the car and Plaintiff's position in the driver's seat, not unreasonable. Qualified immunity is intended "to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsible and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," and "protects all but the plainly incompetent or those who knowingly violate the law." Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation marks and citations omitted). That balance weighs in favor of qualified immunity under the circumstances here.

C.   Malicious Prosecution

The filing of a criminal complaint gives rise to a rebuttable presumption that "the prosecutor filing the complaint excercised independent judgment in determining that probable cause for an accused's arrest exists at that time," thus immunizing investigating officers for damages suffered after the filing of the complaint. Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981). The independent judgment presumption may be overcome by evidence that a prosecutor relied solely on arresting officers' reports that omitted crucial information or contained misrepresentations. Newman v. County of Orange, 457 F.3d 991, 994 (9th Cir. 2006). A plaintiff's contradictory account of events, however, is not sufficient to overcome the presumption. Id.

Here, Plaintiff argues that the Deputy Defendants' reports were falsified, as evinced by surveillance footage of Plaintiff's detention, takedown, and arrest. (Opp. at 13.) The footage at issue, however, is too unclear to overcome the presumption that the prosecutor exercised independent judgment. See Smiddy v. Varney,

10

803 F.2d 1469, 1472 (9th Cir. 1986) ("Smiddy II") (requiring evidence). The surveillance camera was located approximately fifty feet, or six to seven parking spaces, from the incident. Plaintiff's vehicle, and much of the altercation, is largely obscured by two other vehicles, including a full-size van with a ladder mounted on the roof. Plaintiff's vehicle is itself parked such that the incident occurred on the far side of the vehicle, which therefore itself also obstructed the camera's view of all but the earliest stages of the incident. Furthermore, the quality of the video is low, with an apparent rate of approximately three frames per second and no audio. Absent any other evidence that the Deputy Defendants falsified their report, other than Plaintiffs' own account of the incident, the Smiddy presumption applies. Summary judgment is therefore warranted on Plaintiffs' malicious prosecution claim against the Deputy Defendants.

**IV. Conclusion**

    For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated: October 31, 2014

DEAN D. PREGERSON
United States District Judge